UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 10-65173-mar

**WILLIAM SHARP,**  Chapter 13

    Debtor.  Hon. Mark A. Randon

_____/

### UNITED STATES TRUSTEE'S MOTION TO JOIN PARTY

The United States Trustee for Region 9, Daniel M. McDermott, moves to join or substitute Cenlar FSB ("Cenlar") as the respondent to the United States Trustee's objection to the "Notice of Mortgage Decrease Payment Change" filed by Ocwen Loan Servicing, LLC ("Ocwen") on March 31, 2014 ("March 2014 Payment Change Notice"). The United States Trustee bases his request on Fed. R. Bankr. P. 7025(c), made applicable to this contested matter pursuant to Fed. R. Bankr. 9014(c), and Fed. R. Bankr. P. 3001(e)(2). In support, the United States Trustee states:

    1.    On August 10, 2010, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

    2.    The Debtor filed his chapter 13 plan on August 19, 2010, treating GMAC Mortgage, LLC ("GMAC") as servicer for Ally Bank as a class 2 claim to be paid $900.00 per month and a class 4 claim to be paid at $7,200.00 over 60 months.

    3.    GMAC filed its proof of claim ("POC") on October 15, 2010 (Claim 6-1). The proof of claim listed the current monthly mortgage payment at $1,190.75 and the arrearage claim at $13,651.08. Pursuant to the POC the payment effective November 1, 2010 was $1,197.86.

    4.    On December 10, 2010, the parties signed and filed a stipulated judgment, approving a loan modification (Docket no. 41). The stipulated judgment was approved by the

court ("Loan Modification Order") on December 15, 2010 (Docket no. 42). That document stated that the arrearage was deemed to be cured, and the monthly payments were set at $982.66.

5. Despite having signed the stipulated judgment deeming the arrearage to be cured, on December 21, 2010, GMAC filed a second amended proof of claim, continuing to assert an arrearage in the amount of $12,578.04. (Claim 6-3).

6. The Debtor filed his third amended plan on January 3, 2011 (Docket no. 49). The plan complied with the terms of the Loan Modification Order by scheduling the class 2 ongoing payment at $982.66 and showing no class 4 arrears claim.

7. An Order confirming the chapter 13 plan was entered on February 15, 2011 (Docket no. 52).

8. Effective February 16, 2013, GMAC transferred the servicing rights to Ocwen (Claim no. 6). Ocwen filed a Notice of Transfer of Claim with this Court on March 13, 2013. (Docket no. 70) Despite two Court Orders, Ocwen failed to recognize the loan modification. It filed false and incorrect payment change notifications, and failed to correctly apply payments.

9. The United States Trustee objected to Ocwen's Notice of Payment Change (the "Objection") filed March 31, 2014 because it is inaccurate and misstates the amount the Debtor owes (Docket no. 84) (Exhibit A).

10. The United States Trustee also filed a motion for an examination of Ocwen pursuant to Fed. R. Bankr. P. 2004, requesting that Ocwen be ordered to produce documents and a witness to explain the Notice of Payment change filed by Ocwen on March 31, 2014 (Docket no. 86). The United States Trustee has not yet concluded the 2004 Examination of Ocwen's

witness because of a belated and improper claim of privilege raised by GMAC at the examination[1].

11. On August 15, 2014, Cenlar, as servicer for Ally Bank, filed four Amended Notices of Change in Servicing Agent. The fourth of the notices indicated that the transfer was to take effect on July 1, 2014.

12. Also on August 15, 2014, the clerk of the Bankruptcy Court issued a Notice to Transferor of Filing of Transfer of Claim, indicating that the deadline for objecting to the transfer was September 8, 2014.

13. The transfer of claim stated that the claim was in the amount of $120,155.74, with an arrearage amount of $12,578.04. These are the same amounts indicated on the second amended proof of claim filed on December 21, 2010 (Claim 6-3).

14. The transfer of claim failed to recognize the loan modification, and it also failed to account for any payments that had been received during the life of the plan.

15. The United States Trustee intends to continue litigating its objection to the notice of payment change, which is now the responsibility of Cenlar, as the new servicer. Cenlar will be served with the Objection contemporaneously with this Motion.

16. Therefore, the United States Trustee requests that Cenlar be joined with Ocwen as the parties in interest in the pending contested matter. In the alternative, the United States Trustee requests that Cenlar be substituted for Ocwen. Pursuant to Fed. R. Bankr. P. 7025(c), the court has the authority either to join or substitute parties when requested by motion.

17. Fed. R. Bankr. P. 7025 authorizes substitution or joinder of parties where there has been a transfer of interest. *Garmhausen v. Sallie Mae Servicing Corp. (In re Garmhausen)*,

---

[1] The United States Trustee intends to resolve the belated assertion of privilege by filing a motion to compel with this Court.

262 B.R. 217, 222 (Bankr. E.D.N.Y. 2001); *Fischer Bros Aviation, Inc. v. NWA, Inc.*, 117 F.R.D. 144, 146 (D. Minn. 1987).

**WHEREFORE,** the United States requests that the Court enter an order joining Cenlar as a party in interest in the United States Trustee's pending Objection to the Notice of Payment Change filed by Ocwen on March 31, 2014, and that the Court grant such further relief as it deems proper.

        Respectfully submitted,

        **DANIEL M. McDERMOTT**
        **UNITED STATES TRUSTEE**
        Region 9

By    /s/ Kelley Callard (P68537)
        Kelley.Callard@usdoj.gov
        Trial Attorney
        Office of the U.S. Trustee
        211 West Fort St - Suite 700
        Detroit, Michigan 48226
        (313) 226-6773

Dated: February 20, 2015

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                                    Case No. 10-65173-mar

**WILLIAM SHARP**                                    Chapter 13

         Debtor.                                      HON. Mark A. Randon

_____/

**ORDER TO JOIN PARTY
PURSUANT TO BANKRUPTCY RULE 7025(C)**

**THIS MATTER** came before the Court upon the United States Trustee's Motion to Substitute or Join Party Pursuant to Bankruptcy Rule 7025(c) and the Court being otherwise fully advised in the premises.

**NOW, THEREFORE**,

**IT IS ORDERED** that Cenlar be joined with Ocwen as the parties in interest in the pending contested matter.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 10-65173-MAR

**WILLIAM SHARP,**                                        Chapter 13

    Debtor.                                          HON. MARK A. RANDON
_____/

**UNITED STATES TRUSTEE'S OBJECTION TO
NOTICE OF MORTGAGE DECREASE PAYMENT CHANGE FILED
BY OCWEN LOAN SERVICING, LLC**

    The United States Trustee for Region 9, Daniel M. McDermott, objects to the "Notice of Mortgage Decrease Payment Change" filed by Ocwen Loan Servicing, LLC ("Ocwen") on March 31, 2014 ("March 2014 Payment Change Notice") and requests that Ocwen be required to provide a complete loan account history. The United States Trustee bases his request for relief on 11 U.S.C. sections 105 and 502(a), Federal Rule of Bankruptcy Procedure 3002.1(i)(2) and the Court's inherent powers.[1]  In support, the United States Trustee states:

**SUMMARY**

    The Debtor filed bankruptcy while behind on his obligations to GMAC Mortgage, LLC ("GMAC"). Prior to the confirmation of the chapter 13 plan, the Debtor and GMAC negotiated a loan modification. The loan modification was incorporated into the terms of the plan. By that time, GMAC had filed three proofs of claim; all were false.

---

[1] The March 2014 Payment Change is a natural extension of the original Proof of Claim and Form B10 (Official Form 10). Any "party in interest" may object to a proof of claim and, by extension, any notices filed subsequent to that underlying claim. 11 U.S.C. § 502(a). Thus, the U.S. Trustee asserts standing to object in this matter as a "party in interest." Moreover, the U.S. Trustee "may raise and may appear and be heard on any issue in a case or proceeding." 11 U.S.C. § 307; *see also* 28 U.S.C. § 586(a)(5).

Within one month of confirmation, GMAC issued its first payment change notice. It was wrong. Since that time, an additional six payment change notifications were filed[2]. None of them were correct.

The potential consequences to the Debtor are dire. The Debtor is current on all of his payments, but Ocwen contends that he is not. Rather than correctly applying the Debtor's payments to the ongoing principal, interest and escrow, Ocwen is misapplying the payments, and holding them in the escrow account. If this continues unaddressed, the Debtor will have completed all of his plan obligations only to find himself thousands of dollars in debt to Ocwen; all because Ocwen is filing inaccurate documents.

## BACKGROUND

**Facts**

1. On August 10, 2010, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

2. The Debtor filed his third amended plan on January 3, 2011 (Docket # 49). The plan complied with the terms of the Loan Modification Order by scheduling the class 2 ongoing mortgage payment at $982.66.

3. No party objected to the Debtor's third amended plan.

4. An Order confirming the chapter 13 plan was entered on February 15, 2011 (Docket no. 52).

---

[2] On March 13, 2013 a transfer of claim was filed, transferring the claim from GMAC Mortgage, LLC to Ocwen Loan Servicing, LLC as servicer for Ally Bank, effective February 16, 2013 (docket no. 70).

**The Loan Modification**

5.  Two months prior to confirmation, on December 10, 2010, an Order Granting Stipulation for Loan Modification and Modifying the Automatic Stay was entered ("Loan Modification Order") (Docket no. 42).

6.  The Loan Modification Order brought the Debtor current with his mortgage obligations and the arrearage claim was satisfied.[3]

**The Proofs of Claim**

7.  GMAC filed its first proof of claim ("POC") on October 15, 2010 (Claim 6-1). The proof of claim listed the current monthly mortgage payment at $1,190.75 and the arrearage claim at $13,651.08. According to the POC, the payment effective November 1, 2010 was $1,197.86. This was incorrect and the ongoing mortgage payment and the future mortgage payment were overstated.

8.  An amended POC was filed on November 1, 2010 (Claim 6-2). The amended POC reduced the current mortgage payment and the payment effective November 1, 2010 at $934.22. There is reason to believe that their payments were still overstated.

9.  A seconded amended POC was filed on December 21, 2010 (Claim 6-3). The third proof of claim included a large arrearage amount despite the entry of the Loan Modification Order entered six days earlier. This POC was also incorrect.

---

[3] On December 20, 2011 an Order was entered allowing adequate protection payments to GMAC ("Adequate Protection Order") of $982.66, the amount listed in the Loan Modification Order (Docket no. 45). This demonstrates that GMAC recognized the correct monthly mortgage payment amount.

# THE PAYMENT CHANGES

**March 2011 Payment Change**

10. On March 16, 2011, GMAC filed its first Notice of Payment Change ("March 2011 Payment Change"), significantly reducing the monthly mortgage payment to $613.17 effective June 1, 2011 (Docket no. 58).

11. The escrow statement attached to the March 2011 Payment Change indicates the current payment, before the pending change, was $569.75. *See* Docket no. 58, page 2. This doesn't match any prior payment, either in any of the POCs or the Loan Modification Order. This payment change must be incorrect.

12. At some point after December 15, 2010 and before March 16, 2011, the monthly mortgage payment was reduced from $982.66 to $579.75. If the payment changed, the Creditor is required to file a payment change notification. It failed to do so.

13. Ocwen likely received more money than it was entitled to receive.

14. Ocwen has not refunded that money to the Chapter 13 Trustee.

**March 2012 Payment Change and April 2012 Payment Change**

15. On March 28, 2012, GMAC filed its second Notice of Payment Change ("March 2012 Payment Change"), increasing the monthly mortgage payment to $636.84 effective May 1, 2012 because of an increase in the interest rate (Docket no. 65).

16. A month later, on April 25, 2012, GMAC filed its third Notice of Payment Change ("April 2012 Payment Change"), reducing the monthly mortgage payment to $563.25 effective June 1, 2012 (Docket no. 66).

17. The escrow analysis attached to the April 2012 Payment Change listed the prior payment at $613.17, not the payment listed in the March 2012 Payment Change of $636.84. *See* Docket no. 66, page 3.

18. The March 2012 Payment change and the April 2012 Payment Change cannot both be correct. It appears that both are false.

**March 2013 Payment Change**

19. On March 27, 2013, Ocwen filed a Notice of Payment Change ("March 2013 Payment Change"), however, the payment did not change (Docket no. 71). The March 2013 Payment Change indicates the change is based on a reduction in interest from 3% to 2.75% with a "new" payment of $563.25, but the payment is the same as in the April 2012 Payment Change.

20. If there was a decrease in the interest rate, there should be a corresponding decrease in the monthly payment.

21. The March 2013 Payment Change must be false.

**Second March 2013 Payment Change**

22. Within minutes of filing the March 2013 Payment Change, Ocwen filed another Notice of Payment Change ("Second March 2013 Payment Change") increasing the monthly mortgage payment to $610.69 effective June 1, 2013 because of an increase in the escrow amount (Docket no. 72).

23. The Second March 2013 Payment Change had an increased escrow amount of $23.68 but increased the payment by $47.44.

24. The face of the Second March 2013 Payment Change indicates the escrow portion of the payment is increasing to $283.95 but the attached escrow analysis (Docket no. 72, page 3) indicates the escrow portion of the payment is increasing to $326.74.

25. This payment change must be false.

**September 2013 Payment Change**

26. On September 19, 2013, Ocwen filed a Notice of Payment Change ("September 2013 Payment Change"), decreasing the monthly mortgage payment to $532.40 effective November 1, 2013 due to a decrease in the interest rate (Docket no. 76).

27. The interest rate listed in the September 2013 Payment Change is inconsistent with the interest rate listed in the prior payment change.

28. This payment change must be false.

**March 2014 Payment Change**

29. On March 31, 2014, Ocwen filed its most recent Notice of Payment Change ("March 2014 Payment Change"), increasing the monthly mortgage payment to $577.95 effective June 1, 2014 because of an increase in the escrow (Docket no. 77).

30. The escrow statement attached to the March 2014 Payment Change indicates the current payment, before the pending change, was $610.69. *See* Docket no. 77, page 3.

31. There is no record of a payment change increasing the payment from the amount in the September 2013 Payment Change of $532.40, to the amount listed as the current payment in the March 2014 Payment Change, $610.69.

32. At some point after September 19, 2013 and before March 31, 2014, the monthly mortgage payment increased from $532.40 to $610.69. Ocwen was required to file a payment change notification but failed to do so.

33. Over the course of the bankruptcy case, the creditor failed to file many of the required payment change notifications, and the notifications that were filed were incorrect.

## THE ESCROW SURPLUS

34. The escrow surplus is the amount the creditor has on hand that exceeds the amounts necessary to properly fund the escrow account.

35. The Creditor has had a large escrow surplus for the entire length of the case.

36. These funds are either property of estate or belong to the Debtor.

37. The March 2011 Payment Change shows an escrow surplus of $5,851.18. *See* Docket no. 58, page 3.

38. The Creditor may also have failed to account for the surplus in the POC.

39. The escrow analysis attached to the April 2012 Payment Change shows the escrow surplus increased to $6,649.79. *See* Docket no. 66, page 4

40. The escrow analysis attached to the March 2013 Payment Change shows an escrow surplus of $6,231.60. *See* Docket no. 72, page 4.

41. The March 2014 Payment Change also shows a large escrow surplus. The escrow surplus is listed at $6,056.62. *See* Docket no. 77, page 4.

42. The large escrow surplus that has existed through the entire length of this case is property of either the Debtor or the estate, but certainly not Ocwen.

## OCWEN'S MISCONDUCT

43. The Debtor is current with his chapter 13 plan payments, including amounts owing for the ongoing monthly mortgage obligation.

44. The Debtor is current with his obligations to Ocwen.

45. Ocwen failed to file correct payment change notifications.

46. The payment changes that were filed are incorrect, inconsistent, and do not make sense.

47. Ocwen failed to correctly board the loan modification and has failed to internally recognize the loan modification. It is in violation of this Court's Order.

48. Ocwen's records reflect that the Debtor is delinquent with his loan obligations when he is in fact current.

49. Ocwen's filings reflect that it is holding funds it is not entitled to.

50. If these issues continue to be ignored by Ocwen, the Debtor will have completed his obligations under the chapter 13 plan but Ocwen will allege he owes thousands of dollars.

51. Ocwen's actions in this case showcase systemic failures in its servicing systems, including but not limited to, payment change and escrow systems.

52. Ocwen's incorrect filings and actions in this case showcase systemic abuses of the bankruptcy code and rules.

## APPLICABLE RULES AND LEGAL STANDARD

53. Federal Rule of Bankruptcy Procedure 3002.1 applies in a chapter 13 to claims secured by an interest in the debtor's principal residence and provided for under 11 U.S.C. §1322(b)(5). Fed. R. Bankr. P. 3002.1(a).

54. Rule 3002.1(b) requires the holder of a claim involving the debtor's principal residence to file and serve a notice advising of any payment changes with the ongoing monthly mortgage payment. The Rule states:

> Notice of Payment Changes. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Fed. R. Bank. P. 3002.1(b).

EXHIBIT A
10-65173-mar Doc 189 Filed 03/20/15 Entered 03/20/15 00:26:32 Page 83 of 107

55. All of the payment changes notices filed in this case, except for the March 2011 Payment Change[4], are governed by Fed. R. Bankr. P. 3002.1.

56. Rule 3002.1(i) is a remedy for failure to comply with rule 3002.1(b), and provides in pertinent part:

> Failure to Notify: If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
>
> > (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or harmless; or
> >
> > (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

57. Based on the many inconsistencies in the filings, starting with the POCs, Ocwen has failed to comply with Fed. R. Bank. P. 3002.1(b).

58. Accordingly, Ocwen should be required to take the following actions:

   a. File with the Court a complete loan history and a complete escrow history to explain the large escrow surplus, and any readjustment;

   b. Bring the Debtor current on its records;

   c. Advise the Court how the mistakes were made; and,

   d. Advise the Court what actions are being undertaken to ensure these issues do not persist.

59. The requested relief is based on 11 U.S.C. §§ 105 and 502(a); Fed. R. Bankr. P. 3002.1(i)(2), and the Court's inherent powers. *See Countrywide Homes Loans, Inc., v. McDermott,* 426 B.R. 267, 274 (N.D. of Ohio 2010).

---

[4] The March 2011 Payment Change is governed by EDM L.B.R. 3001-2.

60. The United States Trustee may seek further relief based on the information obtained from the loan and escrow histories.

**WHEREFORE,** the United States requests that the Court enter an order requiring Ocwen to file a complete loan history, file a complete escrow history, grant discovery if appropriate, and that the Court grant such further relief as it deems proper.

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By   /s/ Kelley Callard (P68537)
Kelley.Callard@usdoj.gov
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-6773

Dated: May 2, 2014

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 10-65173-mar

**WILLIAM SHARP,**  Chapter 13

　　　Debtor.  Hon. Mark A. Randon
_____/

**CERTIFICATE OF SERVICE**

　　　I hereby certify that on February 20, 2015, I served copies as follows:

1.　Documents Served:　　　*United States Trustee's Motion To Join Party* and *Certificate of Service.*

2.　Served Upon:　　　Adam Reatherford
　　　　　　　　　　　Attorney for Cenlar FSB
　　　　　　　　　　　Trott & Trott
　　　　　　　　　　　31440 Northwestern Hwy.
　　　　　　　　　　　Suite 200
　　　　　　　　　　　Farmington Hills, MI 48334-5422

　　　　　　　　　　　Brian Moore, Esq.
　　　　　　　　　　　Dykema Gossett PLLC
　　　　　　　　　　　39577 Woodward Ave, Suite 300
　　　　　　　　　　　Bloomfield Hills, MI 48304

　　　　　　　　　　　Krispen S. Carroll
　　　　　　　　　　　Chapter 13 Trustee
　　　　　　　　　　　719 Griswold
　　　　　　　　　　　1100 Dime Building
　　　　　　　　　　　Detroit, MI 48226

　　　　　　　　　　　Thomas Paluchniak, Esq.
　　　　　　　　　　　Donald C. Wilson, Esq.
　　　　　　　　　　　700 Towner Street
　　　　　　　　　　　Ypsilanti, MI 48198

3. Method of Service               First Class Mail

                                          **DANIEL M. McDERMOTT**
                                          **UNITED STATES TRUSTEE**
                                          Region 9

                            By:    /s/ Barbara Heilig
                                          Barbara.Heilig@usdoj.gov
                                          Paralegal Specialist
                                          Office of the U.S. Trustee
                                          211 West Fort Street - Suite 700
                                          Detroit, Michigan 48226
                                          313.226.4543

Dated: February 20, 2015